**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LAUREN BURKE, individually, and on behalf of all others similarly situated, | ) | |
| | ) | Class/Collective Action |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | District Judge: |
| ANNA'S HOUSE CORPORATE LLC, | ) | |
| ANNA'S HOUSE ANN ARBOR LLC, | ) | Jury Demand |
| ANNA'S HOUSE RESTAURANT LLC, | ) | |
| ANNA'S HOUSE EAST BELTLINE LLC, | ) | |
| ANNA'S HOUSE NORTHLAND LLC, | ) | |
| ANNA'S HOUSE GRANDVILLE LLC, | ) | |
| ANNA'S HOUSE HOLLAND LLC, | ) | |
| ANNA'S HOUSE KALAMAZOO LLC, | ) | |
| ANNA'S HOUSE WESTLAND LLC, | ) | |
| ANNA'S HOUSE OKEMOS, LLC, | ) | |
| ANNA'S HOUSE GRAND HAVEN LLC, | ) | |
| ANNA'S HOUSE MILFORD LLC, | ) | |
| ANNA'S HOUSE BYRON CENTER LLC, | ) | |
| ANNA'S HOUSE GRAND LEDGE LLC, and | ) | |
| JOSHUA BECKETT, individually, | ) | |
| Defendants. | | |

**CLASS/COLLECTIVE ACTION COMPLAINT**
**FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Representative Plaintiff, LAUREN BURKE ("Representative Plaintiff"), individually and on behalf of all others similarly situated, files this Class/Collective Action Complaint against Defendants ANNA'S HOUSE CORPORATE LLC; ANNA'S HOUSE ANN ARBOR LLC; ANNA'S HOUSE RESTAURANT LLC; ANNA'S HOUSE EAST BELTLINE LLC; ANNA'S

HOUSE NORTHLAND LLC; ANNA'S HOUSE GRANDVILLE LLC; ANNA'S HOUSE HOLLAND LLC; ANNA'S HOUSE KALAMAZOO LLC; ANNA'S HOUSE WESTLAND LLC; ANNA'S HOUSE OKEMOS, LLC; ANNA'S HOUSE GRAND HAVEN LLC; ANNA'S HOUSE MILFORD LLC; ANNA'S HOUSE BYRON CENTER LLC; ANNA'S HOUSE GRAND LEDGE LLC (collectively, the "Entity Defendants"); and JOSHUA BECKETT, individually (together with the Entity Defendants, "Defendants" or "Anna's House"), and alleges as follows:

## INTRODUCTION

1. Representative Plaintiff, Burke, brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Michigan Improved Workforce Opportunity Wage Act ("IWOWA"), MCL 408.931 *et seq.*, arising from Defendants' unlawful pay practices, including their failure to pay minimum wages and proper overtime compensation for all hours worked.

2. Defendants own and operate a chain of thirteen (13) Anna's House breakfast-and-brunch restaurants throughout the State of Michigan under common ownership and control. Defendant Beckett, the chain's owner and Chief Executive Officer, has publicly stated that Anna's House employs approximately 360 people.

3. Within the past three years, Defendants have employed hundreds of front-of-house workers such as servers, hosts, food runners, and expos (hereinafter "Tipped Employees").

4. Accounting for turnover, Plaintiff reasonably believes that there are over 500 employees comprising the class/collective.

5. Defendants paid Representative Plaintiff and similarly situated Tipped Employees a sub-minimum direct cash wage and purported to rely on the "tip credit" provisions of the FLSA and the IWOWA to meet their minimum wage obligations.

6. Defendants violated the FLSA and IWOWA because they: (1) failed to provide Tipped Employees with the required advance "tip credit" notice under federal law, and failed to provide the written notice and obtain the written consent required by Michigan law; (2) calculated and paid overtime at one and one-half times the sub-minimum tipped cash wage, rather than one and one-half times the full applicable minimum wage, thereby shorting every overtime hour worked; and (3) required Tipped Employees to complete mandatory, job-related training — including an approximately five-hour alcohol service course and app-based training modules — without compensation.

7. Defendants uniformly enforced these company-wide policies and practices at all of their restaurants in Michigan irrespective of location.

8. As a result, Defendants forfeited any right to rely on the tip credit and failed to pay Representative Plaintiff and similarly situated Tipped Employees at least the required minimum wage and overtime compensation under the IWOWA and/or FLSA for all hours worked.

9. Representative Plaintiff and the putative class and collective members seek unpaid minimum wages, unpaid overtime compensation, liquidated damages, pre- and post-judgment interest, attorneys' fees, costs, and all other relief available at law and in equity.

**PARTIES**

10. Representative Plaintiff, Burke, is a citizen and resident of Toledo, Ohio.

11. On or about January 1, 2022, Defendants hired Representative Plaintiff, Burke, to work as a Server at Anna's House's Ann Arbor location at 445 E. Eisenhower Parkway, Suite 1, Ann Arbor, Michigan 48108.

12. As of the date of this Complaint, Representative Plaintiff, Burke, remains employed by Defendants.

13. At all times material hereto, Representative Plaintiff, Burke, was a non-exempt, hourly Tipped Employee of Defendants within the meaning of the FLSA and IWOWA.

14. At all times material hereto, Representative Plaintiff was an "employee" of Defendants as that term is defined under the FLSA, 29 U.S.C. § 203(e), and the IWOWA, MCL 408.932.

15. Representative Plaintiff has consented in writing to be a party plaintiff in this action pursuant to 29 U.S.C. § 216(b), and her consent form will be filed with the Court.

16. Defendant, ANNA'S HOUSE CORPORATE LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 801800705) and, upon information and belief, serves as the central management, administrative, and payroll entity for the Anna's House restaurant chain and jointly owns, operates, manages, and/or controls the thirteen (13) Anna's House restaurants referenced in this lawsuit. Its registered office is located at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

17. Defendant, ANNA'S HOUSE ANN ARBOR LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 802213124), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 445 E. Eisenhower Parkway, Suite 1, Ann Arbor, Michigan 48108, and is Representative Plaintiff's direct employer of record. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

18. Defendant, ANNA'S HOUSE RESTAURANT LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No.

801336122), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 3874 Plainfield Avenue NE, Grand Rapids, Michigan 49525. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

19. Defendant, ANNA'S HOUSE EAST BELTLINE LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 801737610), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 2409 E. Beltline Avenue SE, Grand Rapids, Michigan 49546. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

20. Defendant, ANNA'S HOUSE NORTHLAND LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 802998427), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 5488 Northland Drive NE, Grand Rapids, Michigan 49525. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

21. Defendant, ANNA'S HOUSE GRANDVILLE LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 801799094), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 3766 Potomac Circle SW, Grandville, Michigan 49418. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

22. Defendant, ANNA'S HOUSE HOLLAND LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 801832292), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 12450 Felch Street, Holland, Michigan 49424. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

23. Defendant, ANNA'S HOUSE KALAMAZOO LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 802036976), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 4700 Stadium Drive, Kalamazoo, Michigan 49008. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

24. Defendant, ANNA'S HOUSE WESTLAND LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 802064453), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 6601 N. Newburgh Road, Westland, Michigan 48185. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

25. Defendant, ANNA'S HOUSE OKEMOS, LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 802394001), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 1753 W. Grand River Avenue, Okemos, Michigan 48864. It

can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

26. Defendant, ANNA'S HOUSE GRAND HAVEN LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 802464792), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 24 Washington Avenue, Grand Haven, Michigan 49417. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

27. Defendant, ANNA'S HOUSE MILFORD LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 802905798), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 780 N. Milford Road, Milford, Michigan 48381. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

28. Defendant, ANNA'S HOUSE BYRON CENTER LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 803088359), and upon information and belief, jointly owns, operates, manages, and/or controls the Anna's House restaurant located at 525 84th Street SW, Suite 1, Byron Center, Michigan 49315. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

29. Defendant, ANNA'S HOUSE GRAND LEDGE LLC, is a Michigan limited liability company registered and/or authorized to conduct business in Michigan (LARA File No. 803117165), and upon information and belief, jointly owns, operates, manages, and/or controls the

Anna's House restaurant located at 644 Migaldi Lane, Suite 700, Lansing, Michigan 48917. It can be served through its resident agent, Joshua Beckett, at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525.

30. Defendant, JOSHUA BECKETT ("Beckett"), is an individual who, upon information and belief, resides in the State of Michigan.

31. Beckett purchased Anna's House in 2005 and is its owner and Chief Executive Officer. Beckett is the resident agent of every Entity Defendant.

32. At all times material hereto, Beckett exercised operational control over the Entity Defendants, including authority over the compensation policies, payroll practices, and terms and conditions of employment challenged in this lawsuit.

33. Beckett is therefore an "employer" within the meaning of 29 U.S.C. § 203(d) and MCL 408.932, and is jointly and severally liable with the Entity Defendants.

34. Beckett may be served at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525, or wherever he may be found.

35. Defendants collectively and jointly own, operate, manage, and/or control thirteen (13) Anna's House restaurants located in Grand Rapids (three locations), Grandville, Holland, Kalamazoo, Westland, Ann Arbor, Okemos, Grand Haven, Milford, Byron Center, and Lansing — all of which are located in the State of Michigan.

36. Defendants share common finances and bank accounts, common vendor accounts, common management, common ownership, common employees, a single website, common corporate offices, centralized control of labor relations and personnel, and otherwise hold themselves out as a single employer. As such Defendants constitute a single employer or integrated enterprise. *See Crowell v. M St. Ent., LLC,* 670 F. Supp. 3d 563, 579 (M.D. Tenn. 2023).

37. Defendants also constitute an integrated enterprise and/or joint employers because, among other things, they share common ownership and control by Beckett; a common resident agent and a common registered office; centralized management, administrative, and payroll functions through Anna's House Corporate LLC; and common wage-and-hour policies and practices, and they jointly benefit from the work performed by Representative Plaintiff and the putative collective and class members.

38. At all times material hereto, Defendants jointly employed Representative Plaintiff and the putative collective and class members as "employees" within the meaning of the FLSA and IWOWA.

39. At all times material hereto, Defendants were "employers" of Representative Plaintiff and the putative collective and class members under the FLSA, 29 U.S.C. § 203(d), and the IWOWA, MCL 408.932.

40. Defendants, individually and collectively, exercised substantial control over the terms and conditions of employment for Representative Plaintiff and the putative collective and class members, including hiring, firing, discipline, scheduling, training, timekeeping, payroll, and compensation policies.

41. Defendants utilize a single, uniform employee handbook branded "Anna's House" and titled the "Team Member Handbook" that applies to all restaurant locations and all team members.

42. The handbook refers throughout to "the Company," contains company-wide policies governing hours of work, overtime, scheduling, meetings and training, and paid time off, and acknowledges that "[s]ome restaurant locations may have different operating days and hours" — confirming that a single set of policies governs every location.

43. Defendants use a single, company-wide scheduling system and mobile application through which team members at every location input availability, view schedules, and request shift changes, as well as a company-mandated training application through which servers complete training modules.

44. Defendants process payroll for all locations through a single, centralized ADP payroll system. Representative Plaintiff's ADP earnings statements and IRS Form W-2 list her employer as "Anna's House Ann Arbor LLC" at 5200 Plainfield Avenue NE, Grand Rapids, Michigan 49525 — the chain's headquarters and the registered office of every Entity Defendant — rather than the Ann Arbor restaurant address, further evidencing centralized management and payroll operations.

## JURISDICTION AND VENUE

45. This Court has subject matter jurisdiction over Representative Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because they arise under federal law, 29 U.S.C. § 216(b).

46. This Court has supplemental jurisdiction over Representative Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the FLSA claims that they form part of the same case or controversy.

47. Defendants are subject to the personal jurisdiction of this Court because the Entity Defendants are organized and registered to do business in Michigan, Beckett resides and conducts business in Michigan, and Defendants conduct substantial business within Michigan, employ workers in Michigan, and committed the statutory violations alleged herein in Michigan.

48. Venue is proper in the United States District Court for the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

49. Representative Plaintiff worked for Defendants at their Ann Arbor restaurant in Washtenaw County; Defendants own and operate additional restaurant facilities within this judicial district in Westland and Milford; and Defendants committed the statutory violations alleged herein in this judicial district.

## COVERAGE AND PROVISIONS OF THE FLSA AND IWOWA

50. Defendants are all subject to the requirements under the FLSA and IWOWA.

51. The FLSA requires covered employers to pay employees at least the federal minimum wage for all hours worked, 29 U.S.C. § 206, and to pay overtime at one and one-half times the employee's regular rate for all hours worked in excess of forty (40) in a workweek, 29 U.S.C. § 207(a)(1).

52. Defendants are all subject to enterprise coverage under the FLSA because they each individually and/or collectively grossed more than $500,000 in annual revenue in each of the past three years and employed two or more individuals who regularly handled goods and/or materials that moved in interstate commerce.

53. These goods and/or materials included: computers, point-of-sale terminals, credit card processing equipment, pens, paper, paper towels, trash bags, coffee, eggs, flour, food products, glassware, plates, utensils, cleaning supplies, and other items necessary to perform day-to-day responsibilities in the restaurants.

54. The federal minimum wage under the FLSA is $7.25 per hour.

55. The IWOWA requires Michigan employers to pay employees at least the Michigan minimum hourly wage for all hours worked, MCL 408.934, and to pay overtime at not less than

one and one-half times the employee's regular rate for all hours worked in excess of forty (40) in a workweek, MCL 408.934a.[1]

56. The IWOWA permits an employer to pay a tipped employee a reduced hourly wage only if specified statutory conditions are met. Since February 21, 2025, those conditions have included that "[t]he employee's employer informed the employee of the provisions of this section, in writing, at or before the time of hire, and the employee gave written consent," MCL 408.934d(1)(e), and that the employee retain the entirety of his or her gratuities, except for gratuities the employee *voluntarily* shares with other employees in the chain of service, MCL 408.934d(1)(d).

57. Before February 21, 2025, the IWOWA likewise conditioned the reduced tipped wage on the employer having informed the employee of the statute's tipped-wage provisions.

58. The applicable Michigan minimum wage rates and reduced tipped hourly wage rates during the relevant period are as follows:

January 1, 2023, through December 31, 2023: **$10.10 per hour (tipped: $3.84 per hour)**

January 1, 2024, through December 31, 2024: **$10.33 per hour (tipped: $3.93 per hour)**

January 1, 2025, through February 20, 2025: **$10.56 per hour (tipped: $4.01 per hour)**

February 21, 2025, through December 31, 2025: **$12.48 per hour (tipped: $4.74 per hour)**

January 1, 2026, through the present: **$13.73 per hour (tipped: $5.49 per hour)**

---

[1] On July 31, 2024, the Michigan Supreme Court held that 2018 PA 368 was unconstitutional and revived the IWOWA as originally enacted by 2018 PA 337, effective February 21, 2025. *See Mothering Justice v. Attorney General*, No. 165325 (Mich. July 31, 2024). The Legislature thereafter amended the revived Act through 2025 PA 1, effective February 21, 2025. Representative Plaintiff's claims arise under the version of the IWOWA in effect during each workweek at issue.

59. An employer may only take a tip credit if it complies with the notice and other requirements of § 203(m) of the FLSA and the conditions of applicable Michigan law.

60. An employer that fails to satisfy those prerequisites forfeits the tip credit and must pay the full applicable minimum wage for every hour worked, together with overtime computed on that full minimum wage.

## GENERAL ALLEGATIONS

61. Defendants are an integrated entity that collectively owns and operates a chain of thirteen (13) Anna's House restaurants in Michigan under the Anna's House banner.

62. Anna's House is headquartered in Grand Rapids, Michigan, and was founded in 2003 with an original location on Plainfield Avenue.

63. Beckett purchased the business in 2005 and expanded it into its current chain of thirteen restaurants, all located in Michigan.

64. Anna's House now markets a franchise model to prospective operators.

65. Defendants use a single, uniform Team Member Handbook, branded "Anna's House," which applies to all restaurant locations.

66. The handbook contains no reference to any individual LLC entity and no tip credit notice of any kind.

### Tip Credit Notice

67. Defendants employ and have employed hundreds of hourly Tipped Employees at their restaurants in Michigan.

68. Defendants' own handbook identifies "hosts, servers, food runners, expo" as tipped team members.

69. Defendants paid Representative Plaintiff and other Tipped Employees an hourly rate below the applicable Michigan minimum wage — for example, $3.93 per hour throughout

2024, $4.01 per hour from January 1 through February 20, 2025, $4.74 per hour beginning February 21, 2025, and $5.49 per hour beginning January 1, 2026 — and purported to rely on the FLSA and IWOWA tip credit provisions to satisfy their minimum wage obligations.

70. Before an employer may lawfully take a tip credit, the FLSA requires that the employer inform Tipped Employees, in advance, of: (a) the amount of the cash wage the employer will pay; (b) the additional amount claimed by the employer as a tip credit; (c) that the tip credit claimed cannot exceed the amount of tips actually received; (d) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool among employees who customarily and regularly receive tips; and (e) that the tip credit will not apply to any employee who has not been informed of these requirements. 29 U.S.C. § 203(m)(2)(A); 29 C.F.R. § 531.59(b).

71. Michigan law imposes an even stricter requirement: the employer must inform the employee of the tipped-wage provisions *in writing*, at or before the time of hire, *and* the employee must give *written consent*. MCL 408.934d(1)(e).

72. Defendants failed to provide Representative Plaintiff and other Tipped Employees with all components of the required advance tip credit notice, orally or in writing, at the time of hire or thereafter.

73. Defendants likewise never provided the written notice required by Michigan law and never obtained Tipped Employees' written consent to payment of the reduced tipped wage.

74. Defendants' company-wide Team Member Handbook contains no section explaining the tip credit.

75. The handbook mentions tips only incidentally — in a confidentiality policy (listing tips as an example of guest-related information), in a benefits contribution policy (referencing tips

as a source from which benefit costs may be deducted), and in a paid time off policy for salaried team members (stating that PTO pay excludes tips).

76. None of the handbook provisions state the cash wage to be paid, the amount claimed as a tip credit, that the tip credit may not exceed tips actually received, or any other required element of a valid tip credit notice under 29 C.F.R. § 531.59 or Michigan law.

77. Representative Plaintiff, Burke, never received verbal or written tip credit notice when she was hired, or at any other time during her employment, and never gave written consent to payment of a reduced tipped wage.

78. To the contrary, when Representative Plaintiff signed her onboarding documentation in January 2022, the manager who countersigned the document wrote that her pay would be "$7.00 per hour plus tips."

79. That figure did not correspond to the Michigan minimum wage, the Michigan tipped hourly wage, or any rate Defendants actually paid. Defendants instead paid Representative Plaintiff the reduced tipped wage throughout her employment.

80. The only written statement of pay Defendants provided at hire thus misstated the cash wage and said nothing about a tip credit.

81. Representative Plaintiff's ADP earnings statements confirm that Defendants were actively taking a tip credit by paying sub-minimum cash wages for all regular hours worked, rather than the full applicable Michigan minimum wage.

82. Because Defendants failed to provide the required tip credit notice under the FLSA, and the required written notice and written consent under the IWOWA, they forfeited any ability to take a tip credit toward their minimum wage obligations.

**Unlawful Overtime Calculation**

83. When a tipped employee works more than forty (40) hours in a workweek, the employer must pay overtime at one and one-half times the employee's regular rate — which, for a tipped employee, is no less than the full applicable minimum wage.

84. An employer taking a tip credit may not take a larger tip credit for an overtime hour than for a straight-time hour. 29 C.F.R. § 531.60. An employer therefore may not compute the overtime premium by multiplying only the sub-minimum cash wage by one and one-half.

85. Defendants did exactly that. Defendants' centralized payroll system calculated and paid Tipped Employees' overtime at one and one-half times the reduced tipped cash wage.

86. For example, Representative Plaintiff's ADP earnings statement for the pay period of August 12, 2024, through August 25, 2024, reflects 70.95 regular hours paid at $3.93 per hour and 0.78 overtime hours paid at **$5.8950** per hour — precisely 1.5 × $3.93. At the then-applicable Michigan minimum wage of $10.33, Defendants owed at least $15.495 per overtime hour less a tip credit of no more than $6.40, or $9.095 per overtime hour, even assuming a valid tip credit. Defendants thus underpaid each overtime hour by at least $3.20 — and, because no valid tip credit was ever available, by $9.60.

87. Defendants continued this practice into 2025. Representative Plaintiff's ADP earnings statement for the pay period ending January 26, 2025, reflects regular hours paid at $4.01 per hour and overtime paid at **$6.0150** per hour — again, precisely 1.5 × the sub-minimum tipped cash wage, rather than 1.5 × the then-applicable Michigan minimum wage of $10.56.

88. Defendants' own Team Member Handbook acknowledges the correct rule. Its Overtime Hours Policy states: "Tipped team members (ex. hosts, servers, food runners, expo) are paid overtime compensation at a rate of 1.5 times the applicable state or federal minimum wage, not 1.5 times their tipped rate of pay."

89. Defendants' payroll did precisely what their own written policy acknowledges is improper.

90. Because Defendants administer payroll for all locations through a single centralized ADP system using the same rate configuration, this overtime miscalculation was applied uniformly to every Tipped Employee at every location who worked more than forty (40) hours in any workweek.

**Off-the-Clock Work: Mandatory Training**

91. Defendants required Representative Plaintiff and similarly situated Tipped Employees to complete an alcohol service training and certification course as a condition of employment.

92. The alcohol training course took approximately five (5) hours to complete, as reflected in Representative Plaintiff's course completion records.

93. Defendants did not pay Representative Plaintiff or other Tipped Employees any wages for the time spent completing the mandatory alcohol training.

94. Defendants also required every server to download a company-mandated training application and complete additional training modules, each lasting approximately ten (10) minutes.

95. Defendants did not allot paid time during or before shifts to complete these modules.

96. As a result, Tipped Employees — including servers who completed the modules at home — performed this required training without compensation.

97. Time spent in training is compensable working time unless attendance is outside regular working hours, attendance is in fact voluntary, the training is not directly related to the employee's job, and the employee performs no productive work. 29 C.F.R. § 785.27.

98. The training at issue was mandatory and directly related to Tipped Employees' jobs, and is therefore compensable working time. 29 C.F.R. §§ 785.28–.29.

99. Defendants' own Team Member Handbook promises that mandatory training will be paid: team member meetings and additional training "may be mandatory, and if so, you will be paid for your time."

100. Notwithstanding their recognition in the Team Member Handbook that training time was required to be paid, Defendants nevertheless failed to pay for the mandatory training described above.

**Mandatory Tip Sharing**

101. Upon information and belief, Defendants require servers to share a portion of their tips with other employees, including hosts and expos, through a mandatory tip-out established and administered by Defendants.

102. Since February 21, 2025, the IWOWA has conditioned payment of the reduced tipped wage on the employee retaining the entirety of his or her gratuities, except for gratuities the employee *voluntarily* shares. MCL 408.934d(1)(d).

103. A mandatory, employer-imposed tip-out is not voluntary sharing.

104. By requiring Tipped Employees to share their tips, Defendants independently forfeited the reduced tipped wage under Michigan law for all hours worked on and after February 21, 2025.

**Willful Violations**

105. Defendants were aware, or recklessly disregarded, that the FLSA and Michigan law require them to: (a) provide specific tip credit notice before taking a tip credit and, under Michigan law, provide written notice and obtain written consent; (b) calculate overtime on the full minimum

wage rather than the tipped cash wage; (c) pay wages for all hours worked, including mandatory training; and (d) permit Tipped Employees to retain their tips except for voluntary sharing.

106. Defendants nevertheless continued to implement and enforce the unlawful pay practices described above across all thirteen locations, for years, affecting hundreds of employees.

107. Defendants conduct was willful and not in good faith, and could have easily been cured by consulting publicly available compliance materials from the U.S. Department of Labor and the Michigan Department of Labor and Economic Opportunity at no cost to Defendants, but they failed to do so.

108. Moreover, Defendants' own Team Member Handbook expressly states that tipped team members must be paid overtime at 1.5 times the applicable minimum wage, "not 1.5 times their tipped rate of pay," and promises that mandatory training will be paid — yet Defendants systematically paid overtime at 1.5 times the tipped rate and failed to pay for mandatory training.

109. This disconnect between stated policy and actual practice demonstrates knowledge of the legal requirements and deliberate disregard of same, which further demonstrates the willful nature of these violations.

110. Additionally, the deliberate configuration of Defendants' centralized payroll to pay a sub-minimum tipped cash wage, and an overtime rate of exactly one and one-half times that sub-minimum wage, demonstrates that Defendants were fully aware they were taking a tip credit.

111. Defendants' failure to provide the required notice despite that awareness further supports a finding of willfulness.

112. Finally, when Representative Plaintiff objected to a planned policy requiring servers to scrub the restaurant's floors three times per week after being cut from the floor — in addition to rolling silverware and performing regular closing side work — her manager confirmed

that Defendants intended to pay servers the reduced tipped wage of $5.49 per hour for that non-tipped work and stated that the practice was already standard at Defendants' other locations.

113. Defendants' admission in this regard further demonstrates Defendants' disregard for the legal limits on the tip credit.

## CLASS ALLEGATIONS

114. Representative Plaintiff brings her Michigan wage and hour claims as a class action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23.

115. The proposed Michigan Class is defined as:

> **All current and former hourly, tipped, front-of-house employees (including servers, hosts, food runners, and expos) employed by Defendants at any Anna's House restaurant location in the State of Michigan who were paid a direct cash wage below the full Michigan minimum wage at any time within three (3) years preceding the filing of this Complaint through the date of final judgment.**

116. Representative Plaintiff further proposes the following subclasses of the Michigan Class:

> **Michigan Overtime Subclass: All members of the Michigan Class who worked more than forty (40) hours in one or more workweeks and were paid overtime at a rate calculated on the tipped cash wage.**

> **Michigan Training Subclass: All members of the Michigan Class who were required to complete alcohol service training and/or app-based training modules without compensation.**

117. Excluded from the Michigan Class are: (1) any Judge presiding over this action and members of his or her family; (2) counsel for the parties; (3) Defendants and any entity in which Defendants have a controlling interest; (4) persons who properly execute and file a timely request for exclusion from the Class; and (5) legal representatives, successors, and assigns of any such excluded persons.

118. **Numerosity.** The Michigan Class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employ approximately 360 people across

thirteen Michigan restaurants and have employed hundreds of Tipped Employees during the past three years. Representative Plaintiff alone works alongside approximately twelve (12) other servers at the Ann Arbor location.

119. **Commonality.** There are numerous questions of law and fact common to Representative Plaintiff and the Michigan Class, including but not limited to: (a) whether Defendants jointly employed Representative Plaintiff and Michigan Class members as "employees" under the IWOWA; (b) whether Defendants informed Tipped Employees of the tipped-wage provisions of the IWOWA in writing at or before the time of hire; (c) whether Defendants obtained Tipped Employees' written consent to payment of the reduced tipped wage; (d) whether Defendants required Tipped Employees to share their gratuities on a non-voluntary basis; (e) whether Defendants calculated overtime on the tipped cash wage rather than the full Michigan minimum wage; (f) whether Defendants failed to pay for mandatory training; (g) whether Defendants' violations were willful; and (h) the proper measure of damages and liquidated damages.

120. **Typicality.** Representative Plaintiff's claims are typical of the claims of the Michigan Class because Representative Plaintiff, like all Michigan Class members, was an hourly Tipped Employee of Defendants in Michigan who was subjected to the same uniform policies and practices alleged herein.

121. **Adequacy.** Representative Plaintiff will fairly and adequately protect the interests of the Michigan Class. Representative Plaintiff's interests are aligned with those of the Class, and Representative Plaintiff has retained counsel experienced in wage-and-hour class and collective actions.

122. **Predominance and Superiority.** Common questions of law and fact predominate over questions affecting only individual members because Defendants' liability turns on uniform, centrally administered policies, and damages can be calculated from Defendants' own payroll records. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation would be economically impracticable for most Class members, given the relatively small value of their individual claims, whereas class treatment will conserve judicial resources and promote consistent adjudications.

123. Class-wide relief is appropriate to ensure Defendants' compliance with Michigan wage-and-hour laws and to provide relief to the Michigan Class for Defendants' uniform unlawful practices.

## COLLECTIVE ALLEGATIONS

124. Representative Plaintiff brings her FLSA claims as a collective action on behalf of herself and all others similarly situated pursuant to 29 U.S.C. § 216(b).

125. The proposed FLSA Collective is defined as:

> **All current and former hourly, tipped, front-of-house employees (including servers, hosts, food runners, and expos) employed by Defendants at any Anna's House restaurant location in the State of Michigan who were paid a direct cash wage below the full minimum wage at any time within three (3) years preceding the filing of this Complaint through the date of final judgment.**

126. Representative Plaintiff and the potential FLSA Collective members are "similarly situated" within the meaning of 29 U.S.C. § 216(b) because they were subject to Defendants' common policies and practices of: (a) taking a tip credit without providing the notice required by 29 U.S.C. § 203(m)(2)(A) and 29 C.F.R. § 531.59; (b) calculating overtime at one and one-half times the tipped cash wage rather than the full minimum wage; and (c) requiring uncompensated mandatory training. These policies were set centrally, documented in a single company-wide handbook, and implemented through a single centralized ADP payroll.

127. Resolution of Representative Plaintiff's FLSA claims will determine whether these policies and practices violated the FLSA and whether Defendants are liable for unpaid wages, liquidated damages, and other relief for all similarly situated employees.

128. Representative Plaintiff consents to act as representative for the FLSA Collective and to pursue this action on their behalf.

129. Representative Plaintiff seeks to send court-supervised notice to all potential FLSA Collective members, informing them of this action and their right to opt in to this case pursuant to 29 U.S.C. § 216(b).

**COUNT I**

**Violation of the Improved Workforce Opportunity Wage Act,**
**MCL 408.934, 408.934d, and 408.939**
**Failure to Pay Michigan Minimum Wages**
**(Rule 23 Class Action – Michigan Class)**

130. Representative Plaintiff re-alleges and incorporates by reference paragraphs 1 through 129 as if fully set forth herein.

131. At all times material hereto, Defendants were "employers" of Representative Plaintiff and Michigan Class members within the meaning of MCL 408.932.

132. At all times material hereto, Representative Plaintiff and Michigan Class members were "employees" of Defendants within the meaning of MCL 408.932.

133. An employer may pay the reduced tipped hourly wage only if every statutory condition is satisfied, including that the employer informed the employee of the tipped-wage provisions — and, since February 21, 2025, did so in writing, at or before the time of hire, and obtained the employee's written consent. MCL 408.934d(1)(e).

134. Defendants failed to provide Representative Plaintiff and the Michigan Class with the required notice of the tipped-wage provisions, failed to provide that notice in writing at or

before the time of hire, and never obtained their written consent. Defendants' handbook contains no such notice, Representative Plaintiff received no verbal or written notice, and the only written statement of pay Defendants provided at hire misstated her wage as "$7.00 per hour plus tips."

135. Independently, for all hours worked on and after February 21, 2025, Defendants required Representative Plaintiff and Michigan Class members to share their gratuities with other employees on a mandatory, non-voluntary basis, in violation of MCL 408.934d(1)(d).

136. Because Defendants failed to satisfy the conditions for paying the reduced tipped wage, they were required to pay Representative Plaintiff and the Michigan Class the full Michigan minimum hourly wage under MCL 408.934 for every hour worked. Defendants failed to do so.

137. Defendants' violations of the IWOWA were willful and not in good faith.

138. As a direct and proximate result of Defendants' unlawful conduct, Representative Plaintiff and the Michigan Class have been damaged in that they have not received wages due under the IWOWA, and they are entitled to recover: (a) the difference between the wages paid and the full Michigan minimum wage for all hours worked within the three (3) years preceding the filing of this Complaint; (b) an equal additional amount as liquidated damages; (c) reasonable attorneys' fees and costs; and (d) such other relief as the Court deems just and proper, pursuant to MCL 408.939(1)(a).

**COUNT II**

**Violation of the Improved Workforce Opportunity Wage Act,**
**MCL 408.934a and 408.939**
**Failure to Pay Michigan Overtime Compensation**
**(Rule 23 Class Action – Michigan Overtime Subclass)**

139. Representative Plaintiff re-alleges and incorporates by reference paragraphs 1 through 129 as if fully set forth herein.

140. The IWOWA requires employers to pay overtime at not less than one and one-half times the employee's regular rate for all hours worked in excess of forty (40) in a workweek. MCL 408.934a.

141. Representative Plaintiff and the Michigan Overtime Subclass worked more than forty (40) hours in one or more workweeks, and Defendants paid their overtime at one and one-half times the reduced tipped wage — for example, \$5.8950 per hour (1.5 × \$3.93) in August 2024 and \$6.0150 per hour (1.5 × \$4.01) in January 2025 — rather than one and one-half times the full Michigan minimum wage.

142. Defendants thereby failed to pay the overtime compensation required by MCL 408.934a, both because the overtime premium was calculated on the wrong rate and because Defendants were not entitled to any tipped-wage reduction at all.

143. Defendants' violations of the IWOWA were willful. Defendants' own Team Member Handbook states that tipped team members must be paid overtime at 1.5 times the applicable minimum wage, "not 1.5 times their tipped rate of pay."

144. As a direct and proximate result of Defendants' unlawful conduct, Representative Plaintiff and the Michigan Overtime Subclass have been damaged in that they have not received overtime wages due under the IWOWA, and they are entitled to recover: (a) unpaid overtime compensation; (b) an equal additional amount as liquidated damages; (c) reasonable attorneys' fees and costs; and (d) such other relief as the Court deems just and proper, pursuant to MCL 408.939(1)(a).

**COUNT III**

**Violation of the Improved Workforce Opportunity Wage Act,**
**MCL 408.934 and 408.939**
**Failure to Pay Michigan Minimum Wages for Off-the-Clock Training**
**(Rule 23 Class Action – Michigan Training Subclass)**

145. Representative Plaintiff re-alleges and incorporates by reference paragraphs 1 through 129 as if fully set forth herein.

146. The IWOWA requires employers to pay at least the Michigan minimum hourly wage for all hours worked. MCL 408.934.

147. Defendants required Representative Plaintiff and the Michigan Training Subclass to complete an approximately five-hour alcohol service training course and app-based training modules as a condition of employment, and failed to pay them any wages for that time.

148. Defendants' violations of the IWOWA were willful. Defendants' own Team Member Handbook promises that mandatory training "will be paid."

149. As a direct and proximate result of Defendants' unlawful conduct, Representative Plaintiff and the Michigan Training Subclass have been damaged in that they have not received wages due under the IWOWA, and they are entitled to recover: (a) the full Michigan minimum wage for all training time; (b) an equal additional amount as liquidated damages; (c) reasonable attorneys' fees and costs; and (d) such other relief as the Court deems just and proper, pursuant to MCL 408.939(1)(a).

**COUNT IV**

**Violation of the Fair Labor Standards Act,**
**29 U.S.C. §§ 203(m), 206, and 216(b)**
**Failure to Pay Minimum Wages – Invalid Tip Credit**
**(FLSA Collective Action)**

150. Representative Plaintiff re-alleges and incorporates by reference paragraphs 1 through 129 as if fully set forth herein.

151. At all times material hereto, Representative Plaintiff and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e), and Defendants were their "employers" within the meaning of 29 U.S.C. § 203(d).

152. An employer may take a tip credit against its minimum wage obligation only if it first informs the tipped employee of the provisions of 29 U.S.C. § 203(m)(2)(A), as detailed in 29 C.F.R. § 531.59(b).

153. Defendants failed to provide Representative Plaintiff and the FLSA Collective with the required advance tip credit notice. Defendants' handbook contains no tip credit notice, Representative Plaintiff received no verbal or written notice, and the only written statement of pay Defendants provided at hire misstated her wage as "$7.00 per hour plus tips."

154. Because Defendants failed to satisfy the prerequisites for the tip credit, they were not entitled to take any tip credit and were required to pay Representative Plaintiff and the FLSA Collective the full federal minimum wage for every hour worked. Defendants failed to do so.

155. Defendants' violations of the FLSA were willful because they knew or showed reckless disregard as to whether their conduct violated the FLSA. A three-year limitations period therefore applies. 29 U.S.C. § 255(a).

156. As a direct and proximate result of Defendants' unlawful conduct, Representative Plaintiff and the FLSA Collective have been damaged in that they have not received wages due under the FLSA, and they are entitled to recover: (a) unpaid minimum wages; (b) an equal amount as liquidated damages; (c) reasonable attorneys' fees and costs; and (d) such other relief as the Court deems just and proper, pursuant to 29 U.S.C. § 216(b).

## COUNT V

**Violation of the Fair Labor Standards Act,**
**29 U.S.C. §§ 207 and 216(b)**
**Failure to Pay Overtime Compensation**
**(FLSA Collective Action)**

157. Representative Plaintiff re-alleges and incorporates by reference paragraphs 1 through 129 as if fully set forth herein.

158. The FLSA requires employers to pay employees one and one-half times their regular rate for all hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 207(a)(1). An employer taking a tip credit may not take a larger tip credit for an overtime hour than for a straight-time hour. 29 C.F.R. § 531.60.

159. Representative Plaintiff and members of the FLSA Collective worked more than forty (40) hours in one or more workweeks during the relevant period.

160. Defendants paid Representative Plaintiff and the FLSA Collective overtime at one and one-half times the sub-minimum tipped cash wage, rather than one and one-half times their regular rate less the tip credit taken for straight-time hours, and thereby failed to pay the overtime compensation required by 29 U.S.C. § 207.

161. Independently, because Defendants never provided valid tip credit notice, they were required to pay overtime without any tip credit offset, and failed to do so.

162. Defendants' violations of the FLSA were willful because they knew or showed reckless disregard as to whether their conduct violated the FLSA, as evidenced by Defendants' own Team Member Handbook, which acknowledges that tipped team members must not be paid overtime at "1.5 times their tipped rate of pay."

163. As a direct and proximate result of Defendants' unlawful conduct, Representative Plaintiff and the FLSA Collective have been damaged in that they have not received overtime

wages due under the FLSA, and they are entitled to recover: (a) unpaid overtime compensation; (b) an equal amount as liquidated damages; (c) reasonable attorneys' fees and costs; and (d) such other relief as the Court deems just and proper, pursuant to 29 U.S.C. § 216(b).

**COUNT VI**

**Violation of the Fair Labor Standards Act,**
**29 U.S.C. §§ 206 and 216(b)**
**Failure to Pay Minimum Wages for Off-the-Clock Training**
**(FLSA Collective Action)**

164. Representative Plaintiff re-alleges and incorporates by reference paragraphs 1 through 129 as if fully set forth herein.

165. Time spent in mandatory, job-related training is compensable "hours worked" under the FLSA. 29 C.F.R. §§ 785.27–.29.

166. Defendants required Representative Plaintiff and the FLSA Collective to complete an approximately five-hour alcohol service training course and app-based training modules as a condition of employment, and failed to pay them any wages for that time, let alone the mandatory $7.25 federal minimum wage.

167. Defendants' violations of the FLSA were willful because they knew or showed reckless disregard as to whether their conduct violated the FLSA, as evidenced by Defendants' own Team Member Handbook, which promises that mandatory training "will be paid."

168. As a direct and proximate result of Defendants' unlawful conduct, Representative Plaintiff and the FLSA Collective have been damaged in that they have not received wages due under the FLSA, and they are entitled to recover: (a) unpaid minimum wages for all training time; (b) an equal amount as liquidated damages; (c) reasonable attorneys' fees and costs; and (d) such other relief as the Court deems just and proper, pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE, Representative Plaintiff, LAUREN BURKE, individually and on behalf of all others similarly situated, respectfully requests that the Court:

(a) Find that Representative Plaintiff and those who meet the FLSA Collective definition are similarly situated; authorize the issuance of FLSA notice to all similarly situated individuals;

(b) Certify Counts I through III as class actions under Rule 23, appoint Representative Plaintiff, LAUREN BURKE, as Class Representative for the Rule 23 Michigan Class and Subclasses, and appoint Representative Plaintiff's counsel as Class Counsel;

(c) Declare that Defendants violated the IWOWA by paying the reduced tipped wage without satisfying the statutory conditions, including written notice, written consent, and the employee's retention of all gratuities except those voluntarily shared, and by failing to pay the applicable Michigan minimum wage for all hours worked;

(d) Declare that Defendants violated the IWOWA and the FLSA by calculating and paying overtime at one and one-half times the tipped cash wage rather than the full applicable minimum wage;

(e) Declare that Defendants violated the IWOWA and the FLSA by failing to pay wages for mandatory training;

(f) Declare that Defendants violated the FLSA by taking a tip credit without providing the notice required by 29 U.S.C. § 203(m)(2)(A);

(g) Award Representative Plaintiff, the FLSA Collective, and the Michigan Class and Subclasses unpaid minimum wages and unpaid overtime compensation, plus liquidated damages under the FLSA and IWOWA, and all other damages available under applicable law;

(h) Award pre- and post-judgment interest at the maximum rates allowed by law;

(i) Award reasonable attorneys' fees and costs under the FLSA and IWOWA;

(j) Award such other legal and equitable relief, including injunctive and declaratory relief, as the Court deems just and proper to remedy Defendants' unlawful pay practices and to prevent them from continuing to violate federal and state wage-and-hour laws.

**JURY DEMAND**

Representative Plaintiff, LAUREN BURKE, on behalf of herself and all others similarly situated, demands a trial by jury on all issues so triable.

Date: October 26, 2026.

Respectfully submitted,

/s/ Andrew R. Frisch
**ANDREW R. FRISCH (FL Bar No. 27777)**
Morgan & Morgan, P.A.
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
afrisch@forthepeople.com

/s/ Jordan Richards
**JORDAN RICHARDS (FL Bar No. 118587)**
USA Employment Lawyers -
Jordan Richards, PLLC
200 S. Andrews Ave. Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 871-0050
jordan@jordanrichardspllc.com

*Attorneys for Plaintiff*